firearm. He initially denied having that firearm, additionally denied knowing that it was illegal for him to cross the border with that firearm, and denied having criminal history that would open him up to punishment for having that firearm. After he was convicted of smuggling a controlled item, the district court found that his three false statements obstructed justice under U.S. Sentencing Guideline 3C1.1. That was error. The person's sentence can be enhanced for obstructing the administration of justice with respect to the investigation, prosecution, or sentencing of his offense, but the commission in the commentary makes very clear that there are two types of statements relevant here that do not obstruct justice. First, in Comment 2, the sentencing guideline tells us that a denial of guilt does not obstruct justice within the meaning of the enhancement. This court has relied on that comment in United involved in planning an attempted escape from the prison. Mr. Swarovski was interviewed once prison officials discovered the plot. He denied being involved in the escape attempt, but the investigation proceeded and investigators found physical evidence that he had been involved as well as statements of other witnesses that he had been involved. This court found it was error to enhance Mr. Swarovski's sentence for obstruction of justice based on his false statement that he wasn't involved in the offense because that statement was a denial. But denials are not the only type of statements that the Sentencing Commission says do not qualify for this sentencing enhancement. The other type of statements that are relevant here are statements that do not significantly obstruct or impede an investigation. Also in Swarovski, this court held that Swarovski's denial or statement that he wasn't involved in the escape attempt did not significantly obstruct or impede the investigation. So here we have Mr. Sotopara who made three statements, all of which were denials. He denied having the firearm, which was one element of the offense when he was crossing the border. He also denied knowing that it was illegal to cross with the firearm, which was another element of the offense of which he was ultimately convicted. The third statement that the district court relied on was his denial of having criminal history. Now, while that's not relevant to the offense that he was eventually charged with, which was smuggling a good across the border, it is obviously relevant to other crimes that the investigators were likely looking into, such as 922 G1 being a felon in possession of a firearm, or more relevantly to Mr. Sotopara. Let's back up a little bit. This is a plain error review, is that correct? No, Your Honor. This is a de novo review. Mr. Sotopara objected to the enhancement in the court in his written objections to the precedence investigation report, and then at sentencing, Mr. Sotopara's counsel urged the district court not to apply the obstruction of justice enhancement specifically because the statements that Mr. Sotopara made did not, quote, rise to the level of obstruction of justice. And counsel for Mr. Sotopara below also cited the fact that Mr. Sotopara recanted very quickly after making the statements, those statements. So specifically, when he was coming into the port of entry, he denied to the first officer having a firearm. When he was referred to secondary inspection, he admitted that he had the firearm. When he was being interviewed by investigators, he initially said... Is there a case that suggests that if the defendant quickly, in other words, there's a time element, if the defendant quickly recants or corrects a false statement, that it mitigates the application of the enhancement? I have not found a case that involves specifically a recantation, Judge Inglehart, but my argument is that here the recantation shows that the investigation was not significantly obstructed or impeded. And particularly looking at Swarovski, we have investigators looking to other sources. They have to look for physical evidence. They have to interview other people. Here, all they had to do was keep talking to my client for less than an hour before he admitted that his statements were false. The first one, very quickly, in the time it takes to drive from primary to secondary inspection area, he admitted the statements were false. And the other ones, within a 50-minute interview, he admitted that he assumed it was illegal to take a firearm into Mexico and that he had criminal history that was described in the reports. So I think this case involves significantly less hindrance to the investigation that was present in Swarovski or the other case in which this court has evaluated similar statements, United States v. Ahmed. There, there was a person who was involved in harboring illegally present aliens. That person, when interviewed by agents, denied knowing the people that he had rented a hotel room for. And then agents, you know, followed other leads and found that he was, that he was, you know, had rented this hotel room for those people. But his statement denying the knowledge of them did not significantly impede the investigation because it didn't send them off on the wrong path. So here, similarly, Mr. Soto's PARA statements, especially in light of the fact that he recanted and, you know, corrected the statements himself, did not send the agents off on the wrong path. They ended up using the entire DVT of his statements against him at the trial as evidence of a confession. And why should we disregard the district judge's statement that she was tempted to vary upward but had found that the guideline range calculated, which you're contending was improperly calculated, was sufficient? Judge says it's sufficient and would have been tempted to, to vary upward. Should we just disregard that or is there some error that makes that all irrelevant at this point? Yes, Your Honor. I don't think that Judge Count's statement that he was tempted to vary upward is sufficient for the government to meet its burden under harmless error review. Um, under the first, you know, way that the government can show harmless error review, the government has to show that, uh, the district judge considered both the correct and the incorrect guideline range and made a statement to the effect of having considered both of these ranges, I'm confident in the sentence that I'm imposing and would impose it regardless of which one's correct. Um, there's no mention of 18 to 24 months in the record, um, which is this, the range that I argue is correct. Um, and there's no indication that the district court made any statement that, you know, regardless of the correct or incorrect range, um, I would impose a 30 month sentence. I think your question though goes more to the second way that the district court, that the government can show, um, harmless error, which is obviously a very heavy burden. Um, and there's a couple of reasons why the statement I'm tempted to upwardly vary doesn't quite get the government there. Um, first, the district court did eventually find that the ga- guideline in this case, range in this case was fair and reasonable. Um, it chose a sentence at the high end of that guideline range, um, and did not cite any reasons that it would rely on to justify a variance. Your, your honor points to the, the sort of ambiguous statement, I'm tempted to vary upward in this case, but there was no, you know, reason, um, about, you know, criminal history not taken into account or the gravity of the offense. And I mean, if we look at the facts of this case, it involved one firearm and body armor, it involved someone without any prior, uh, you know, significant prior convictions. Um, it would be hard to see why an upward variance, um, would be justified in this case. But if there were any doubt about the harmlessness of the error, um, the parties agree that after the guideline range changed, the district court changed Mr. Sotopara's sentence, um, when the, uh, comm- commission retroactively amended, um, Mr. Sotopara's sentence he received for being subject to a criminal justice sentence at the time, um, his guideline range changed, um, from 24 to 30 months, well, his erroneous calculated guideline range, as I contend, uh, was originally 24 to 30 months. After the amendment, it became 21 to 27 months, and the district court revised his sentence downward to 27 months. So I think it's very difficult for the government to show, um, or claim that the district court here had in its mind, um, a 30-month sentence when once the guideline range changed, um, the sentence became 27 months. Um, finally, just to address the, the plain error issue, if I am mistaken and counsel below did not adequately preserve this issue, given that Swarovski and Achmed are binding cases on this court, that Mr. Sotopara's statements were clearly denials, did not substantially obstruct the investigation, the government cites to the fact that they had to search the car, that's something that they would do in any case where contraband is discovered. They cite that they had to interview him for 50 minutes, again, something they would do in any case, um, involving, um, an offense like this at the port of entry. Would, would secondary inspection always involve, uh, search of the vehicle? I, I don't think going to secondary inspection would always involve, would always involve a search of the vehicle. I think what caused, the record here shows that what caused a search of the vehicle is once he got to secondary inspection, Mr. Sotopara said, I have a firearm. So it was, it was his confession, um, that, that caused the search of the vehicle in combination with the fact that he was committing the offense, um, not the false statement, um, at primary inspection. But I think given the binding nature of Swarovski and Achmed, um, even if there, this were plain error review, um, we've shown that there's a clear error, we've shown a reasonable likelihood that had the correct guideline range of 18 to 24 months been incalculated, um, there would not have been an upward variance to 30 months, um, showing that his substantial rights were affected. And that given that this is an ordinary guideline error case, this court should exercise its discretion to correct that error. If there are no further questions, I think you're good. Can we correct the error or we remand for re-sentencing? Oh, I'm sorry. Yes, Your Honor. You would remand for, I mean, you would, you would remand for re-sentencing. But today, you know, there was not sufficient evidence here to support an obstruction of justice enhancement and remand for re-sentencing. Let's revisit the standard of review. Yes, Your Honor. In the objection to the district court, did Mr. Sotopara specifically rely on the application notes? No, Your Honor. He did not cite to application comment 2 or comment 4G. How does that make his objections specific enough to allow the district court an opportunity to correct the error that he complains of? So, Your Honor, looking at this court's guidance and the rule on what you have to do below, uh, you know, you have to make the objections sufficiently clear for the district court to know what you're objecting to. Mr. Sotopara made his claim clear that he was objecting to the obstruction of justice enhancement. But I think he made the grounds for his claim clear as well. He said these statements don't rise to the level of obstruction of justice. He said the fact of the recantation, um, solved any obstruction of justice issue, which tracks identically with the argument that I'm making on appeal that it didn't substantially obstruct or hinder the investigation. Really, the only thing missing from counsel below was a citation to the commentary. Um, but the issue and the analysis was there for the district court to evaluate and decide. Is that a factual objection versus an objection to the appropriate legal standard to use to consider whether? I don't think there was any contest about the facts here. I think everybody agreed Mr. Sotopara made these statements and that these statements were false. I think the only question was legally whether those false statements qualified as obstruction of justice. So my answer to your question is a legal question, I believe. If there are no further questions, I thank you for your time. You saved time for both. Thank you. Ms. Durbin? May it please the Court. Good morning, Laura Durbin for the United States. This case turns on harm. The question before the Court is would the district court have sentenced Bada to the same sentence for the same reasons and did that got, did an incorrect calculation of the guideline affect his sentence? And it didn't. The Court says as much on page 556 of the record, which was already referenced, um, in Judge Counts saying, had I, had I even sustained the objections, I would have been kind of in the same, I would have been in the same place. And the, the Court isn't looking at each statement individually. It sat through a trial, listened to the evidence, heard the witnesses, and it wasn't just one near denial. It was multiple falsehoods throughout the investigation that Mr. Bada, Mr. Bada made, um, where he's continually trying to dupe the officers and to avoid accountability. First— But, but did it, did it cause them to undertake a more thorough investigation or, or some sort of difference? To the extent of, of him going into the, um, the secondary lane from primary and then going, once he makes the admission, I have a firearm, then going into the, um, the interview. But the, we put our best argument forth on obstruction. Um, the case law is where it is, and there's no evidence in the, in the, um, PSR that there was really a, a, a, or a, sorry, a continuation or prolonged, prolonged investigation because of those statements. But if you look at the state, the Court wasn't just necessarily having to look at obstruction. It was looking at his conduct. He enters the primary lane and he tries to go through. And when the officer bangs on the car, it's, oh, I didn't know I was supposed to stop. Even though he's already been through, he's admitted, he admits in the interview that he's already passed through prior times at a port of entry. Then at 337, he says, no, I don't have any firearms, even though there's body armor and ammo and a gun that he knows about. And then he later says I brought for protection. So it wasn't just merely I forgot. Then finally at 353, he says, I have a, I have a pistol. Then he sits through an interview where he, um, first says that he didn't know it was illegal. And well, maybe it was. And then he agrees, yes, it was. It's kind of like, no, I don't have a dog. Um, no, my dog doesn't bite anyone. No, um, my dog was tied up. So he's continually trying to avoid accountability. And that's what the Court was looking at. So let me ask you a hypothetical, uh, which I think by extension is similar to what we have here. What if a defendant, uh, in addition to denying the commission of a crime upon arrest, uh, doesn't take responsibility, uh, is not accountable, puts the government through its paces to secure an indictment from a grand jury and go to trial and the defendant actually testifies and denies a series of facts including the ultimate crime but is nonetheless convicted? Is that defendant obstructing justice? I don't, I don't think that under the guidelines, no, they're not obstructing justice. But the Court can still look at to, at his conduct under the three fifty, 3553 factors in assessing a punishment that's proper for, for the offense, for . . . But those are the points. When we do the guideline calculation, you know, most, a lot of defendants when they plead, they want the three points. Yeah. Uh, so, so there is accountability or, or some incentive, a reward incentive for taking responsibility. But is there a penalty, is it an obstruction to maintain innocence, deny guilt and actually testify to that and get convicted? There isn't a pen, no, of course not. There's not a penalty for maintaining your innocence and having the government go through its paces. But then, but then why in this case, this seems like a lot less than that where there's an initial denial which is probably pretty reasonable under the circumstances, the usual course of action. Uh, and then counsel, your opponent mentioned the time distance between the denial and then the correction or the truthful statement. Uh, why is that an obstruction as opposed to simply a, a, a misstatement or an untruthful statement upon arrest? Well, I think it's more than a misstatement based upon his interview with the HSI agents because he's completely denying to the, the officers at the port of entry, I don't have a gun. Then he enters the interview and it changes throughout the interview. I don't have, I do have a gun. I thought it was illegal. Yes, it is illegal. Yes, I'm on a deferred contract for domestic violence and I know I shouldn't have a gun. So there's more than just that few mere denials. It's the entire conduct that the court was looking at. Within three witnesses, the court had heard at least three separate lies or falsehoods. And so while still it may not be obstruction per se under the guidelines, the court can still consider that conduct during its sentencing and arriving at a just punishment. Oh, there's no question the court can consider it as relevant conduct, but in this case there was an application of the guidelines with specific instructions that go with that guideline and that's the issue that we have to decide, correct? Well that's one of the issues you have to decide. I'm still maintaining you can decide this on harm because the court says essentially, I would have arrived here anyways. I would have arrived at this 30 month sentence. He references the ... He didn't say it that strongly, did he? No, he doesn't say it that strongly. He says, I have it up here because I want to say it and this is on page 556. I do believe that even if I had sustained and then had I sustained one or more of the objections, I still think we're in the right guideline range, 24 to 30 months. And in the government's sentencing memorandum, as Mr. O'Neill said, there was no clear statement on the record of I've considered this guideline had I sustained the objections and I'm still at this guideline. But there is evidence that the district court did consider the lower guideline. The sentencing memorandum put forth by the government asked for a variance if both objections had been sustained and it came out to a 15 to 21 month range. The district court references that argument and then comes away with the 30 months. So even on the lower end of 15 to 21 months, the court is still at that 30 month sentence. And I think that's fairly good evidence that it thought that 30 month sentence was appropriate. If that was the appropriate sentence, then how do you reconcile the reduction to 27 months after the guideline change? I think it's easily reconcilable of the court seeing, okay, there was a change in the guideline and I should account for that in this sentence. But there can still be a variance even with that. And I think that's what this is. There's still a variance even with that. We would find out if we vacated and remanded for resentencing. You would find out if you vacated and remanded for resentencing. You would. I guess if there are no further questions, I have nothing else for the court. Thank you. Thank you, Ms. Durbin. Mr. O'Neill for rebuttal. So I want to focus very briefly on exactly what the district court said. It said, though the court is tempted to vary upward, I will not. I do believe that even had I sustained the, I sort of see what the assistant United States attorney said below, is saying, had I sustained one or more of the ejections, I still think we're in the right guideline range, 24 to 30 months. I know Mr. Sotopara doesn't agree with that, but Mr. Sotopara thinks he should have been acquitted. That simply cannot meet this court's standards for showing harmless error. It's certainly not a consideration of the correct guideline range of 18 to 24 months. It also comes nowhere near showing that the district court's imposition of a sentence at the top of the incorrect guideline range was something, a sentence that he would have given even if the guideline range was substantially lower at 18 to 24 months. The 30-month sentence would have been an upward variance, and there were no reasons given supporting that variance. And I think, Judge O'Neill-Hart, your questions to my friend on the other side illustrate that what Mr. Sotopara did was wrong. He tried to hide what he did, as everyone who commits a crime does, but he did not obstruct justice within the meaning of the enhancement. Rather, he took the usual course of action that everyone who is in the midst of a smuggling incident takes. They initially, typically, deny that they're smuggling until they're caught. Here, Mr. Sotopara did not deny until he was caught. He denied until he was referred to secondary inspection area and immediately said, I have a firearm. He initially denied, knowing that it was illegal to take that firearm, but after agents discussed with him the evidence and the sign that he saw when exiting the country, he conceded, yes, I assumed it was illegal to take a firearm. And when he was confronted, when he was asked whether he had criminal history, he said, I don't have any criminal history. And in a sense, he was right, depending on how strictly you interpret the question, because he didn't actually have any convictions. He was on deferred adjudication. And when law enforcement asked him, aren't you on deferred adjudication, he conceded the accuracy of what they had found in their database about his criminal history. This was not obstruction of justice. It was plain error, and the district court did not go through the necessary steps of considering the correct guideline range and analyzing the sentence in light of the correct guideline range. So this court should remand for resentencing. Thank you. Thank you, Mr. O'Neill. Your case is under submission, and we notice that you're court appointed. We wish to thank you for your willingness to take the appointment. You've done a good job on behalf of your client. Thank you, Judge. Next case, United States v. Moreno.